**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

ROBERT LYNCH, an individual,

    Plaintiff,

v.

NESTLE PURINA PETCARE COMPANY, a Missouri corporation,

    Defendant.

_____

**COMPLAINT WITH REQUEST FOR JURY TRIAL**
_____

COMES NOW, the Plaintiff, Robert Lynch, by and through his attorney, Thomas H. Mitchiner, Mitchiner Law, LLC, and submits his Complaint and Request for Jury Trial against Defendant, Nestle Purina Petcare Company, and states as follows:

**NATURE OF THE CASE**

This is an employment discrimination case arising from the discriminatory treatment of Robert Lynch [Lynch] a male over forty years old, by his employer, Nestle Purina Petcare Company [Purina].  The discriminatory practices, based on Lynch's age, include, but are not limited to discriminating against Lynch concerning the terms and conditions of his employment, and terminating him. Lynch also asserts a retaliation claim against Purina.

The discriminatory and retaliatory actions violated the Age Discrimination in

1

Employment Act of 1967, 29 U.S.C. § 621 *et. al.* [ADEA]

## JURISDICTION AND VENUE

1. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331.

2. This is an action authorized and instituted pursuant to the ADEA.

3. The claims in issue arose in the City and County of Denver, State of Colorado.

4. All claims arose in the Judicial District of this Court. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) (c).

## PARTIES

5. Plaintiff, Robert Lynch [Lynch], a male over the age of forty, is a resident of the State of Colorado.

6. Lynch most recently held the position of Production Team Lead for the Third Shift at Purina's Denver, Colorado Plant [Denver Plant].

7. Defendant, Nestle Purina Petcare Company [Purina], is a Missouri corporation with its principal offices in Missouri registered with the Colorado Secretary of State to do business in Colorado.

8. Purina produces dry dog food and cat food at its Denver Plant.

9. Lynch is an employee under the ADEA.

10. Purina is an employer under the ADEA.

## **ADMINISTRATIVE PROCEDURES**

11. Prior to filing this action, Lynch timely, properly, and lawfully exhausted all required administrative remedies.

12. Lynch filed a timely charge of age discrimination and retaliation, actions in violation of the ADEA, with the United States Equal Employment Opportunity Commission [EEOC]. [EEOC Charge No. 541-2021-01189].

13. On July 29, 2021, the EEOC mailed a Notice of Right to Sue letter to Lynch.

14. This action is timely filed because it is filed within ninety days of Lynch's receipt of the Notice of Right to Sue letter issued by the EEOC.

## **Background**

15. Prior to working for Purina Lynch served as a member of federal SWAT teams for 26 years.

16. Purina operates the Denver Plant 24 hours a day 7 days per week.

17. To operate the Denver Plant 24 hours a day 7 days per week the plant has three shifts.

18. The first shift runs from 6:50 am through 3:00 pm, second shift runs from 2:50 pm to 11:00 pm, and third shift runs from 10:50 pm to 7:00 am.

19. Lynch started working for Purina on or about November 13, 2017.

20. When he started working for Purina he worked as a Utility Operator and earned $12.38 per hour.

21. After being hired Lynch, like all Purina employees was placed on a 120-day probation period. Lynch completed his probation period.

22. After 60-days of employment Purina allows employees to bid on current open positions within the Denver Plant.

23. Lynch placed a bid for the position of Third Shift Level 1 Extruder Operator.

24. Purina has three levels of Extruder Operator.

25. An Extruder Operator, operates, controls, and monitors an extrusion machine, which cooks and shapes the pet food.

26. Lynch bid on this position because it was the highest paying and the most challenging position available at that time at the Denver Plant.

27. Lynch started as a Level 1 Extruder Operator in February 2018.

28. In May 2018, Purina promoted Lynch to Third Shift Team Lead Relief Supervisor, because Lynch had been performing those duties for some time in the absence of the normal supervisor.

29. At this time Purina also promoted Lynch to a Level 2 Extruder Operator position.

30. In November, Scott Ogden, the Production Manager at the Denver Plant, Pam Behm, the Human Resources Director at the Denver Plant and Kip Stevenson the Factory Manager of the Denver Plant promoted Lynch to Third Shift Production Team Lead.

31. As Production Team Lead Purina paid Lynch $36.33 per hour.

32. Lynch regularly worked overtime, in 2020 Lynch earned approximately $160,000.00 per year.

33. Lynch's direct supervisor on the Third Shift was Jacob Alexander [Alexander].

34. Alexander is a male under the age of 40 years old.

35. Throughout his time as Third Shift Production Team Lead Lynch performed demonstrably better than any of his peers.

36. For example, Lynch performed more coaching sessions with the employees he supervised, his shift produced more tons of product than the other two shifts, filled out the logs more often than any other shift and had fewer quality holds than any other shift.

37. For the entire time Lynch worked on Third Shift it was short staffed and did not have an adequate number of employees to perform and complete the nightly tasks.

38. Moreover, Lynch was the only Supervisor on duty on the third shift.

39. In the middle of July 2020, Purina disciplined Lynch for emails he sent to other Purina employees that it perceived as unprofessional.

40. Many other Supervisors not of Lynch's protected class used unprofessional language and derogatory language in emails and in person to each other and the employees they supervised.

41. These younger Supervisors were given the opportunity to take classes or have other training to improve in this area.

42. Purina did schedule Lynch and other supervisors to take an eight-week Dale Carnegie training class around June/July 2020.

43. During this time David Portales, a supervisor like Lynch, was on vacation so Lynch had to cover his shift which caused Lynch to work many overtime hours.

44. Lynch attended the first training class.

45. Purina human resources did not allow Lynch to complete the workshop because according to it he was working too many hours.

46. Purina supervisors younger than Lynch took the entire eight-week course.

47. For example, Nick Del'Aquilla [Del'Aquilla], a supervisor younger than Lynch, had numerous complaints made against him by employees concerning how he treated and talked to the employees.

48. Purina, in recognition of Del'Aquilla's issues provided him with management classes and training to improve his communication with employees.

49. Except for the Dale Carnegie class, Purina did not offer these classes to Lynch.

50. Purina has not terminated Del'Aquilla even though he continues to have issues with communicating with employees.

51. On or about November 25, 2020, after Lynch had conducted a Toolbox meeting the only Slurry Operator (a slurry operator is responsible for the plant cook operations to ensure maximum quality and quantity in accordance with Purina's operation objectives) on duty that night told Lynch that because of a meeting he had

earlier that day he would be leaving his shift early. In response to this Lynch said "Fuck."

52. Many of the employees that worked under Alexander had issues with his management. Because of this on or about December 8, 2020, Ann Marie Brinkman, a Purina human resources employee, had a meeting with Lynch and others who Alexander supervised. In the meeting Lynch complained about age discrimination Alexander's poor treatment of him. The other employees in the meeting echoed Lynch's comments.

53. On or about December 9, 2020, Lynch became sick and had to miss a few days of work.

54. On the 14th of December, Lynch's doctors cleared him to return to work on the 15th.

55. A week after the meeting, and the day Lynch was supposed to return to work from being sick, on or about December 15, 2020, Purina suspended Lynch.

56. Allegedly, a person had called Purina's St. Louis offices to complain about the comment Lynch had made on November 25, 2020. Purina suspended Lynch so it could investigate the incident.

57. On or about January 8, 2021, Purina completed its investigation and contacted Lynch to tell him that it had to terminate him for the incident that occurred on November 25, 2020.

58. After going home on the 9th of December Lynch never returned to Purina.

59. Purina terminated Lynch without giving him the opportunity to present his side of the events.

60. Furthermore, in terminating Mr. Lynch Purina did not follow its progressive discipline policy.

61. Purina did not and does not terminate younger Team Leads or Supervisors for similar conduct.

62. Shortly after terminating Mr. Lynch Purina replaced him with a worker younger than him.

## First Claim for Relief
(Age Discrimination – 29 U.S.C. § 623)

63. The foregoing allegations are realleged and incorporated by reference.

64. At all times in issue, Lynch performed his duties in a satisfactory manner.

65. At all times in issue, Lynch did not engage in any conduct warranting the discriminatory adverse actions described herein.

66. Purina discriminated against Lynch because of his age by intentionally depriving Lynch of his right to be free from age discrimination in the performance, enjoyment, continuation, rights, benefits, and privileges of his employment relationship with the Purina, in violation of 29 U.S.C. § 623(a)(1), (2).

67. The ADEA applies to Lynch and Purina.

68. Purina discriminated against Lynch because of his age: (a) with respect to his compensation, terms, conditions, or privileges of employment; and/or (b) by limiting, segregating, or classifying Lynch in a way, which deprived, or tended to deprive, Lynch of employment opportunities, or otherwise adversely affect his status as an employee.

69. Purina engaged in continual, increasing, and intentional age discrimination in taking adverse unlawful employment practices against Lynch because of his age.

70. Specifically, Purina did not provide Lynch with the same opportunities to improve his leadership and communication skills that it provided to younger supervisors and terminated him for actions that it does not terminate younger supervisors for.

71. Purina replaced Lynch with an employee younger than him after it terminated him.

72. Purina treated Lynch differently than similarly situated employees because of his age with respect to the opportunities provided to them to improve their leadership and communication skills.

73. Purina acted willfully, with malice or reckless indifference to the rights of Lynch.

74. As a result of Purina's actions Lynch suffered damages in an amount to be proved at trial.

**Second Claim for Relief**
(Retaliation – 29 U.S.C. § 623(d))

75. The foregoing allegations are realleged and incorporated by reference.

76. On or about December 8, 2020, Ann Marie Brinkman, a Purina human resources employee, had a meeting with Lynch and others who Alexander supervised.

77. In the meeting Lynch complained about age discrimination and Alexander's poor treatment of him.

78.     The other employees in the meeting echoed Lynch's comments.

79.     On January 8, 2021, Purina terminated Lynch's employment.

80.     Purina terminated Lynch in retaliation for his opposition to its discriminatory practices in violation of 29 U.S.C. § 623(d).

81.     A casual connection exists between Lynch's complaints and the termination because it occurred less than a month after he complained about age discrimination to human resources

82.     A reasonable employee would have considered Lynch's termination for complaining about age discrimination as being materially adverse.

83.     Purina acted willfully, with malice or reckless indifference to the rights of Lynch.

84.     As a result of Purina's actions Lynch suffered damages in an amount to be proved at trial.

### Request for Relief

WHEREFORE, Plaintiffs, Robert Lynch, respectfully prays for a judgment to be entered against Nestle Purina Petcare Company as follows:

    A.   Against Nestle Purina Petcare Company for back pay, loss of benefits, and all economic benefits associated with Lynch's employment, under 29, U.S.C. § 621 et. al., as allowed by law;

    B.   Against Nestle Purina Petcare Company for front pay under 29, U.S.C. § 621 et. al., as allowed by law;

C. A finding that Nestle Purina Petcare Company, willfully violated 29 U.S.C. § 621 et. al. and for liquidated damages available to Lynch, under 29, U.S.C. § 621 et. al., as allowed by law;

D. Against Nestle Purina Petcare Company for attorney fees and costs available to Lynch, under 29, U.S.C. § 621 et. al., as allowed by law;

E. To award Lynch all other legal and equitable relief, to which Lynch is entitled pursuant to any law, that this Court deems just, equitable, and proper.

## **JURY TRIAL REQUEST**

Pursuant to Fed. R. Civ. P. 38 (a) (b) (c), and 29 U.S.C. § 626(c)(2), and all applicable laws providing for a right to trial by jury, Lynch seeks a jury trial of all claims and issues in this action.

Respectfully submitted on 26 October 2021 by:

Mitchiner Law, LLC

/s/ Thomas H. Mitchiner
Thomas H. Mitchiner
Mitchiner Law, LLC
1240 S. Parker Rd. Suite 103
Denver, CO 80231
Phone: 720-538-0371
E-mail: tmitchiner@mitchinerlawllc.com

Attorney for Plaintiff Robert Lynch

Address of Plaintiff:

5691 Water Oak Cir. Castle Rock, CO 80108